(No. 47933.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RICHARD BUTLER, Appellee.

*Opinion filed Sept. 20, 1976.—Rehearing denied Nov. 12, 1976.*

William J. Scott, Attorney General, of Springfield, and Robert H. Rice, State's Attorney, of Belleville (James B. Zagel, Jayne A. Carr, and Anne Taylor, Assistant Attorneys General, and Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Richard J. Wilson, Deputy Defender, Office of the State Appellate Defender, of Springfield, and Richard E. Cunningham, Assistant Defender, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of St. Clair County found the defendant, Richard Butler, guilty of the armed robberies of Max Wilson and Lloyd Hall, and he received concurrent sentences of 8 to 15 years on each conviction. The Appellate Court, Fifth District, with one justice dissenting, reversed the conviction and sentence for the armed robbery of Hall. The appellate court affirmed the conviction for the armed robbery of Wilson, but remanded for resentencing. (31 Ill. App. 3d 433.) We granted the State's petition for leave to appeal.

The two victims of the robbery drove in Wilson's car to East St. Louis in search of a tavern where they understood they could pick up women. They saw the defendant and Joe Smith standing on a street corner, and stopped to ask directions to the tavern. Smith drew a revolver and the defendant pulled out a steak knife, and Wilson and Hall were ordered out of the car. The four were standing within arm's length of one another as the defendant robbed Wilson of four dollar bills and some change, and Smith robbed Hall of a five dollar bill. Wilson and Hall were then told to get out of the area. They drove a couple of blocks, encountered a police car and directed the two officers to the scene of the robberies, where the defendant and Smith were still standing. When one of the officers emerged from the squad car with his gun drawn, Smith ran. The defendant did not, and the other officer arrested him and found a steak knife in his pocket. Smith was shot when he turned and pointed a shiny object at the pursuing officer. A .38-caliber revolver found a few feet from Smith's dead body was identified at trial by the victims as the one used during the robberies. The money allegedly stolen was never recovered, but when the victim Hall returned to the scene, he picked up credit cards which he testified Smith had thrown to the ground in the course of searching his wallet for money. Both victims positively identified the defendant at trial.

The appellate court reversed the defendant's conviction for the armed robbery of Hall on the ground "that the two armed robberies arose from but one alleged course of conduct stemming from one intent or motivation. Defendant at the time of the commission of the crime had one intent and that was to commit armed robbery. This intent was carried out by his committing the crime of armed robbery. The victim's testimony that each robber actually took money from only one victim does not constitute a substantial change in the nature of the criminal objective. Neither does charging the defendant both as a principal

and as an accomplice change the criminal objective." 31 Ill. App. 3d at 435.

The majority of the appellate court felt that this result was compelled by our decision in *People v. Williams* (1975), 60 Ill. 2d 1. There Williams and an accomplice had entered a home intending to commit robbery. In the course of the robbery one of the occupants was murdered. The defendant was convicted of burglary, armed robbery and murder, and was sentenced to concurrent terms of imprisonment of 10 to 20 years for the burglary and 20 to 40 years for the armed robbery. He was also sentenced to a consecutive term of 75 to 100 years for the murder. He contended that only his conviction for the most serious offense, murder, could stand. We affirmed the convictions for murder and armed robbery but reversed the conviction for burglary on the ground that the burglary and armed robbery arose from the same conduct and motivation. There was a single charge of armed robbery in the *Williams* case, and the legal consequences of robberies of multiple victims were neither involved nor discussed. Nothing said in our opinion in that case bears upon the issue involved in the present case.

A case that does closely resemble the present one is *People v. Prim* (1972), 53 Ill. 2d 62, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731. Separate convictions and concurrent sentences for each armed robbery had been imposed in that case upon a defendant who was one of several men found guilty of robbing three persons aboard a Chicago Transit Authority bus. The defendant contended that "since his sole act was taking money from the bus driver, multiple sentences should not have been imposed." (53 Ill. 2d at 77.) The court rejected that contention, saying:

> "The armed robbery of the bus driver, of William Giersz and of Ermelindo Maldonado were three separate and distinct crimes committed by different persons or the same person at different

times. \*\*\* Separate criminal acts were involved in each case and the court properly imposed separate though concurrent sentences for each offense. *People v. Raby,* 40 Ill. 2d 392." 53 Ill. 2d at 78.

Because the defendant and his companion each devoted his primary attention during the robbery to a different victim, it does not follow that each was not guilty of both robberies. The crime of robbery is defined as follows:

> "A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1971, ch. 38, par. 18—1(a).)

Neither the threat posed by the defendant's knife nor the threat posed by his companion's gun was confined to a single person. Both robbers mounted a concerted threat of the use of force against both victims, and it is immaterial which robber took property from which victim. (See *People v. Szatkowski* (1934), 357 Ill. 580, 583.) We hold, therefore, that the defendant was properly convicted of both armed robberies.

The defendant also contends that the convictions should be reversed because evidence was admitted that his companion fled when the police officers got out of the squad car. The defendant relies upon the rule that the flight of another person is not relevant to prove the guilt of the accused. (See, *e.g.,* 2 Wigmore, Evidence sec. 276 (3d ed. 1940).) This contention, however, overlooks the fact that evidence to establish the existence and identity of the defendant's companion, and the fact that he was armed with a revolver at the time of the robberies, was clearly admissible. The defendant was arrested at the immediate scene, but his companion was not, and it was necessary to explain how his body and his revolver came to be where they were found, some distance away. That could not be done without reference to his flight, his

pursuit by the officer, and the shooting. Both attorneys advised the jury that the evidence of the flight of the defendant's companion was not admissible to prove the defendant's guilt, and the judge formally instructed the jury to the same effect. The situation is therefore the familiar one in which evidence which is not admissible for one purpose is nevertheless properly received for another. See 1 Wigmore, Evidence sec. 13 (3d ed. 1940); *People v. Witherspoon* (1963), 27 Ill. 2d 483, 487.

Defendant's final argument is that his concurrent sentences of 8 to 15 years are excessive in light of his background and the changes made by the Unified Code of Corrections, which took effect on January 1, 1973, during the pendency of the appellate court proceedings. On both points we disagree. Under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)), a reviewing court has the power to reduce punishments. In exercising this power, however, reviewing courts should consider the superior opportunity of the trial judge during trial and at the sentencing hearing to acquire information about the defendant which would be helpful in determining a suitable punishment. (*People v. Caldwell* (1968), 39 Ill. 2d 346.) We cannot say that the sentencing judge abused his discretion in this case. The presentence report shows that the defendant was 17 years old, had an extensive juvenile record, and was on parole at the time these armed robberies were committed.

The minimum sentence for armed robbery, when the defendant was sentenced on February 4, 1972, was five years under section 18—2(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 18—2(b)). The Unified Code of Corrections reduced the minimum for armed robbery from five to four years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) The defendant contends that the sen-

tencing judge might have imposed a lower minimum sentence if he had been acting under the Unified Code of Corrections. This argument lacks persuasive force because it is clear that the trial judge had determined that a sentence greater than the minimum was appropriate.

The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*